## O'Neil *v.* Jamieson, Appellant.

*Promissory notes—Collateral—Application of collateral—Contract.*

Where a person holds stock as collateral security for the payment of a promissory note, under an agreement by which on default on the note, he may either sell the stock after public notice, or keep it upon delivering or returning the note to the makers, such person, after a default on the note, is confined to the two alternative rights which he has under the agreement. He cannot, upon default, have the stock transferred to his own name and at the same time retain the note in his possession. If he attempts to do so, the makers of the note or their assignee have a right, for six years from the maturity of the note, to demand the return of the stock upon payment of the amount due upon the note.

Argued April 29, 1912. Appeal, No. 174, Jan. T , 1911, by defendants, from decree of C. P. Warren Co., June T. 1907, No. 17, on bill in equity in case of William O'Neil v. M. W. Jamieson and C. W. Jamieson, Executors of the last Will and Testament of H. A. Jamieson, deceased. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an account and the surrender of certain certificates of stock.

BOUTON, P. J., specially presiding, found the facts to be as follows:

The plaintiff brings his bill to compel the defendants to deliver over to the plaintiff twenty-five shares of the capital stock of the Cornplanter Refining Company, which were pledged to H. A. Jamieson as security for a loan of $1,200, made by H. A. Jamieson to

William O'Neil and John L. McWilliams on or about February 19, 1896, and for further and other relief.

From the evidence adduced, we find the following facts:

1. On February 19, 1896, the plaintiff, William O'Neil and John L. McWilliams gave to H. A. Jamieson their note for $1,200 payable at the Warren National Bank at Warren, Pa., at four months from the date thereof, and transferred to said Jamieson as collateral security thereto, certain shares of the capital stock of the Cornplanter Refining Company, to wit, certificates Nos. 154 for 13 shares, 199 for four shares, 200 and 257 for four shares each, a total of twenty-five shares of said capital stock at the par value of $100 per share, with authority to the office of said Cornplanter Refining Company, to transfer said stock to said H. A. Jamieson at his request upon the books of the company, and provided that said Jamieson shall re-assign to said O'Neil and McWilliams or to whoever they may direct, if the said note is paid at maturity; with authority to said Jamieson if said note shall not be paid at maturity to have the said stock exposed at public sale after reasonable public notice, and the same sold to the highest bidder for the same; and if the sum realized shall not be sufficient to pay the said note above referred to and all costs, expenses and interest, then the said Jamieson shall look to the said William O'Neil and John L. McWilliams for the payment of the balance. But if said Jamieson shall choose to keep the said stock without any public sale, then he shall deliver up the above mentioned note to said O'Neil or McWilliams, as appears from the written agreement, appended to plaintiff's bill.

2. The said makers of said note did not pay said note nor did said Jamieson re-assign said stock to them or to any other person, nor did he expose said capital stock to public sale, or sell the same as authorized by said agreement, nor did he ever deliver up said note

to said O'Neil or McWilliams as provided for in said agreement.

3. On or about February 5, 1897, said H. A. Jamieson surrendered said stock held by him as collateral as aforesaid to the Cornplanter Refining Company and procured the re-issue thereof to himself.

4. On or about May 1, 1900 the said John L. McWilliams assigned to said William O'Neil his interest in the said certificates of stock Nos. 200 and 257 for four shares each of the capital stock of said Cornplanter Refining Company.

5. On April 2, 1901, said William O'Neil, in the presence of a witness, A. S. O'Neil, tendered the said H. A. Jamieson, $1,545.40 in payment of said note of $1,200, with interest up to April 2, 1901, which tender the said Jamieson refused to accept, saying that too much time had elapsed for him to consider the matter, and said Jamieson refused to deliver said stock to said O'Neil.

6. The said H. A. Jamieson died on the 27th day of December, 1904, leaving a last will and testament wherein he nominated and appointed the said M. W. Jamieson and C. W. Jamieson to be executors thereof and letters testamentary were duly issued to them, and they were duly qualified and are now acting as executors of the said last will and testament of the said H. A. Jamieson, deceased.

7. The said capital stock was on or about March 28th, 1905, transferred to said C. W. Jamieson, one of the said executors of said H. A. Jamieson, deceased, and one of the defendant executors in this proceeding.

8. The plaintiff's bill in this case was filed on March 30, 1907.

9. The market value of said capital stock on February 19, 1896, was $100 per share; on February 5, 1897, the market value was $100 per share; on April 2, 1901 the market value of the same was $100 per share, and the

market value of the same down to the time of the filing
of this bill was $100 per share.

The Court entered the following decree:
And now, to wit, May 23, 1911, this cause came on
to be heard for final decree upon accounting at this
term, and was argued by counsel, and upon considera-
tion thereof, it is ordered, adjudged and decreed as
follows, viz: That the defendants, M. W. Jamieson and
C. W. Jamieson, executors of the last will and testa-
ment of H. A. Jamieson, deceased, pay from the estate
of the said H. A. Jamieson, deceased, to William O'Neil,
the plaintiff herein, seven thousand one hundred twenty-
five dollars and forty-three cents ($7,125.43) being the
value of the original stock assigned and stock dividends
declared thereon $4,226.25, the cash dividends paid
thereon to the date of this decree $3,695.36, and interest
upon said cash dividends to this date $1,477.82, less the
amount of the note of William O'Neil with interest,
$2,274.

*Error assigned* was the decree of the court quoting
it.

*John G. Johnson* with him *J. H. Alexander* and *W.
S. Clark,* for appellant.—The transfer of the shares into
Jamieson's name; his collection of dividends; and his
continued maintenance of ownership, amounted to an
exercise of his option to retain the shares and to treat
the note as cancelled: Hartranft's Estate, 153 Pa. 530.

The laches of O'Neil and his conduct barred his re-
covery:    Brown v. Kemmerer, 214 Pa. 521; Neely's
App., 85 Pa. 387; Waterman v. Brown, 31 Pa. 161;
Barnes v. Pickett Hardware Co., 203 Pa. 570; Mifflin
County Nat. Bank v. Fourth St. Nat. Bank, 199 Pa. 459;
Brown v. Bronson, 87 N. Y. Supp. 872; Hoyt v. Latham,
143 U. S. 553 (12 Sup. Ct. Repr. 568); Griggs v. Day,

158 N. Y. 1 (52 N. E. Repr. 692) ; Wheeler v. Breslin, 95 N. Y. Supp. 966.

*D. I. Ball* with him *Edward Lindsey* and *C. E. Bordwell,* for appellee.—The transfer of this stock upon the books of the corporation, to the name of Mr. Jamieson, it is admitted, was under the terms of the contract of pledge, Exhibit "A." Even if Mr. Jamieson, the pledgee, had bid off this stock at public sale, in his own name, it would still be charged with the trust, and belong to the pledgor, subject to the payment of the note: Plucker v. Teller, 174 Pa. 529; Russell v. Miller, 54 Pa. 154; Register v. Sellers, 4 Pa. C. C. R. 490; Hestonville Mantua & Fairmount Pass. R. R. Co. v. Shields, 3 Brewst. 257; Granger v. Pigott, 10 Pa. D. R. 327; Sitgreaves v. Farmers, &c. Bank, 49 Pa. 359; McManus v. Sweatman, 22 W. N. C. 54; Horwitz v. Norris, 49 Pa. 213; Wickersham v. Savage, 58 Pa. 365.

There is no act of estoppel or laches shown on the part of Mr. O'Neil to affect his right of recovery in this case.

It is clear from the authorities that no suit could be brought by O'Neil against Jamieson, until payment, or tender of payment of the note, and demand for return of the stock; and the statute of limitations does not begin to run until then: In Humphrey v. County National Bank of Clearfield, 113 Pa. 417; Hartranft's Estate, 153 Pa. 530; Finkbone's App., 86 Pa. 368; McGough v. Jamison, 107 Pa. 336; Wambold v. Hoover, 110 Pa. 9; Slymaker v. Wilson, 1 P. & W. 216; Reynolds v. Cridge, 131 Pa. 189; Cook v. Carpenter, 212 Pa. 165.

PER CURIAM, May 13, 1912:

At the maturity of the note given by McWilliams and O'Neil to Jamieson, he could have done one of two things with the stock which had been pledged to him as collateral security for the payment of the obligation. By the terms of the pledging agreement he could have ex-

posed it to public sale, "after reasonably published no-
tice," and sold it to the highest bidder; or, if he had so
chosen, he could have kept the stock upon delivering
or returning the note to the makers. These were the
two rights given to him in the collateral agreement, the
terms of which are to be strictly enforced against
him in the attempt to forfeit the stock of the makers of
the note. Jamieson, however, did neither of the things
he was authorized to do, but instead, on or about Feb-
ruary 5, 1897—nearly eight months after the maturity
of the note—he surrendered the certificates to the Corn-
planter Refining Company and procured a new certi-
ficate for the same in his own name. This he had no
right to do, for he had not delivered up the note to the
makers. The condition in the agreement upon which
he was authorized to keep the stock was that "he shall
deliver up the above mentioned note to the said O'Neil
or McWilliams." It is immaterial that O'Neil may
have known what Jamieson had done. As long as the
note had not been returned to him or McWilliams, their
right continued, for six years from the maturity of the
obligation, to demand the return of the stock upon
payment of the amount due to Jamieson. On April
2, 1901, O'Neil, who had in the meantime purchased
the stock pledged by McWilliams, tendered to Jamieson
$1,545.40, the full amount due on the note. This tender
was refused, and its refusal then gave O'Neil the right
to file a bill for the return of the stock. That right con-
tinued for six years, and, having been exercised on
March 30, 1907, the decree to which O'Neil was entitled
subsequently followed, and is now affirmed, with costs.